<div style="margin-left:2em">Moreton & Edrington, P.L.C.<br>297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469<br>Telephone: (703) 437-7305 | Facsimile: (703) 592-6316</div>

| | |
|---|---|
| **JANE DOE AND A.A.,** | |
| **Plaintiffs** | |
| **v.** | |
| **BRIDGETT BEICHLER, FELIX COLACIELLO, PATRICIA O′ CONNELL, AND VIRGINIA PATTERSON IN THEIR INDIVIDUAL CAPACITIES** | **Case No. _____** |
| **AND** | |
| **LOUDOUN COUNTY SCHOOL BOARD AND LINDA BELL IN AN OFFICIAL CAPACITY** | |
| **Defendants.** | |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

COMES NOW A.A. and Jane Doe, by and through her next of friend, A.A., and files their Complaint pursuant to U.S. Const. amend. I and XIV; 20 U.S.C. §1681, 42 U.S.C. § 1983, 28 U.S.C. § 1367 and Virginia statutes § 2.2-3713 and § 2.2-3809. In support thereof, the Plaintiffs state as follows:

### INTRODUCTION

During the 2017-2018 school year, Felix Colaciello ("Colaciello") used his position as a math teacher at Trailside Middle School ("Trailside") to get close to Jane Doe ("Doe"), a thirteen-year-old enrolled in Colaciello's class. Colaciello gave Doe gifts, gave her an A on a quiz she didn't take, nominated her for an award, and told her personal stories about himself to gain her trust and manipulate

her sympathies. His actions escalated to include sexual contact and culminated in forcible rape in the spring of 2018 within a locked Loudoun County classroom.

Doe's mother, A.A., informed Principal Beichler and other school officials of her concerns about Colaciello's inappropriate interactions with Doe prior to the rape, but the LCPS officials failed to take appropriate actions to protect Doe from further harm. After the rape, the investigating officials failed to bring in an expert on sexual assault procedures which resulted in two ineffective interviews with a raped thirteen-year-old. At a third interview, Jane Doe was finally able to draw a picture of the sexual assault for the Child Protective Services ("CPS") caseworker; however, the investigation was prematurely concluded.

A.A. was horrified to learn that the school not only reinstated Colaciello but also allowed him to chaperon students in Europe on a trip that had been advertised to Trailside students on official LCPS channels. She informed the school that she would attend school on the first day of the 2018-2019 school year to ensure her daughter's safety and would take every legal means available to bring Colaciello to justice.

School personnel collaborated with Colaciello to petition for a protective order against A.A. Ultimately, the state court denied Colaciello's request for a protective order and dismissed his petition as frivolous.

After the state court dismissed Colaciello's petition for a protective order against A.A., Trailside Middle School sentenced Jane Doe to an in-school-restriction ("ISR") for allegedly missing school in December of 2018. This sentence was only reversed after Jane Doe proved that she did not have any unexcused absences from class during the times she was accused of missing.

In the fall of 2018, Jane doe disclosed identifying marks in Colaciello's genitalia region to her mother and counselor, both of whom immediately related the information to CPS. The CPS caseworker

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

conducted a forensic interview with Doe and sent a DVD of this interview to the Loudoun Sheriff's Department, but the department refused to conduct further investigation because they had already closed the case.

From the fall of 2018 through the winter of 2019, Doe's mother informed CPS, law enforcement, and a state delegate about identifying marks on Colaciello's genitalia region, but Loudoun County Public Schools had previously reinstated Colaciello and law enforcement refused to re-open the investigation.

In March of 2019, the Principal Beichler suspended Jane Doe for ten days after Doe sent an email to Trailside Staff asking them to be vigilant of Colaciello as he is a sexual predator. Doe sent this email after school hours, off-school grounds, and with her own personal device, **but Principal Beichler accused Doe of harassing Colaciello, threatening Colaciello, and violating LCPS's acceptable use policy.** The suspension barred Doe from setting foot on Loudoun County School property at all times, including: (1) when the public is generally allowed to attend events during school hours, (2) when the public is generally allowed to use outdoor school facilities after school hours, and (3) to attend district meetings such as school board meetings.

Doe appealed the suspension and LCPS reduced the suspension to three (3) days but refused to expunge the suspension from Doe's academic record. Additionally, LCPS officials informed Doe that she would be suspended again if she continued to speak out about such issues. Doe's mother requested copies of Doe's educational records going back to May 2018 but has only been provide 41 pages of records from February and March of 2019.

The Plaintiffs seek equitable relief in the form of (i) an order to expunge the suspension from Jane Doe's educational record, (ii) an order of this court for declaratory and injunctive relief to enjoin the Defendants from suspending Doe for exercising her speech rights including speaking out on matters

3

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

of safety or public concern and to enjoin the Defendants from barring Doe from public school grounds when it constitutes a limited or designated public forum, and (iii) a writ of mandamus directing Defendants to provide the requested educational records. Additionally, Plaintiffs seek (iv) an award of compensatory and punitive damages and a reimbursement of attorney fees and costs.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as it is a civil matter arising under U.S. Const. amend. I and XIV; 20 U.S.C. §1681, 42 U.S.C. § 1983 and by pendent jurisdiction as to the state law claims made herein pursuant to 28 U.S.C. § 1367.  Virginia statutes § 2.2-3713 and 2.2-3809 provide jurisdiction to hear the records request claims.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2). All the events giving rise to this claim occurred within the Eastern District of Virginia.  Defendant Loudoun County School Board ("LCSB") is located in this District and all other Defendants are members of the school board or serve as its employees.

## PARTIES

3.      Plaintiff Jane Doe is a resident and citizen of Loudoun County, Virginia. She is currently fourteen years old, an 8th grader at Trailside Middle School, and has attended Loudoun public schools since she was nine (9) years old.

4.      Plaintiff A.A., Doe's mother, is a resident and citizen of Loudoun County, Virginia. She works as a substitute school teacher in Loudoun County Public Schools.

5.      Defendant Loudoun County School Board ("LCSB") is the governing body responsible for overseeing the public schools within the political subdivision of Loudoun County, Virginia.  Virginia law, statute § 22.1-71, establishes each school board as a body corporate which may sue or be sued.  The Loudoun County Public Schools ("LCPS") is the public school district for

4

the political subdivision of Loudoun County.

6.  Defendant Felix Colaciello ("Colaciello") is an LCPS employee who has taught math in Trailside Middle School for the last five (5) years.

7.  Defendant Bridgett Beichler ("Beichler") is an LCPS employee who has served as the principal for Trailside Middle School for the last five (5) years.

8.  Defendant Patricia O'Connell ("O'Connell") is an LCPS employee who has served as the assistant principal for Trailside Middle School for the last five (5) years.

9.  Defendant Virginia Patterson ("Patterson") is an LCPS employee who serves as the director of school administration and is the designee of Superintendent Eric Williams for hearing student disciplinary appeals.

10. Defendant Linda Bell ("Bell") is a Loudoun County Child Protective Services ("CPS") employee who led the latest investigation into the assault by Colaciello against Jane Doe. The Loudoun CPS is a department of the political subdivision of Loudoun County, Virginia.

## OTHER RELEVANT FIGURES

11. Eric Williams ("Williams") is an LCPS employee who serves as the superintendent of the 80,000+ student school district. Williams has served in that role since 2014.

12. Jeffrey Morse is the LCSB chairman. He has served on the school board since 2012 and served as the chairman since 2016.

13. Eric Hornberger is the Ashburn district representative for the LCSB, the home district of Jane Doe. He has served on the school board since 2012.

14. Detective David Orr is the Loudoun County Sheriff's Office ("LCSO") assigned to investigate the assaults against Jane Doe.

15. Kristi Hurd ("Hurd") is an LCPS employee who serves as the director of the Human

Resources.

16.    Jane Doe ("Doe") was a thirteen-year-old student enrolled at Trailside Middle School ("Trailside") during the 2017-2018 school year. She had attended public school in Loudoun County since she was nine (9) years of age and prior to the events described herein, she was a straight A student who rarely missed school and had never been in trouble at school.

17.    Felix Colaciello ("Colaciello") was Doe's seventh grade math teacher. During the school year, he began touching Doe's hair, putting his hand on her shoulders, holding her hand when showing her how to use the school's iPad application. In one instance, he put his finger directly on her chest while telling Doe "you are too quiet."

18.    Doe became uncomfortable with Colaciello's touching and confided in her mother. A.A. reported the touching to Principal Beichler and Assistant Principal O'Connell.

19.    A.A. also consulted a friend about Doe's discomfort and her friend's husband had an in-person meeting at Trailside on March 12, 2018 to discuss Colaciello's inappropriate touching.

20.    Beichler told A.A. that, per policy, the matter was reported to Loudoun County's Child Protective Services ("CPS") and Loudoun County Public School Human Resources. She also assured A.A. that she would take care of the problem by having a stern talk with Colaciello.

21.    Colaciello's demeanor to Doe changed a few days after A.A. spoke with Principal Beichler. When Doe asked for a pencil, he threw it at her. When Doe asked for assistance on an assignment, Colaciello snapped "what do you want?" Colaciello also reminded Doe that he had nominated her for an award.

22.    This hostile behavior persisted until A.A. received a survey from Colaciello asking if Jane Doe felt "emotionally safe" talking to Colaciello. A.A. responded positively because she feared

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

further retaliation from Colaciello.

23.      After receiving A.A.'s positive survey response, Colaciello became unusually nice to Doe again. He gave her Hershey kisses candy and touched her hair when she sat next to him. One day, a classmate called Doe a brat and ridiculed her for being too short to play basketball. Colaciello defended Doe and later told her not to believe that "clown" and that he loved her. Another time, Doe's classmate noticed Doe received special attention and asked why Doe was the teacher's pet.

24.      Colaciello often invited Doe to his class during Resource (i.e. study hall) period. When Doe presented a pass for him to sign per school policy, however, he informed her that he'd been working at the school for four years and it wasn't important.

25.      Colaciello and Doe were often alone during this time and Colaciello began sharing personal stories with Doe. He shared that his mother had a miscarriage when he was five-years-old which prevented his mother from working for several months. He told her that his mother had succumbed to cancer and that he regretted that did not attend her funeral when she died. He told her his father had an affair during his mother's battle with cancer and how that hurt her terribly. He showed Doe pictures of his brother's wedding to a Scandinavian woman, his sister-in-law's pregnancy, and of his sister-in-law in labor during his niece's birth. Colaciello shared that his brother hurt him terribly when he said that Colaciello would never impregnate a wife because Colaciello is infertile. When Doe asked Colaciello what infertile meant and he responded that it meant he could not have kids and began to cry.

26.      Colaciello also asked Doe personal questions such as where she lived, who she lived with, where her parents worked, if Doe was allowed to attend sleepovers, what restrictions Doe's mother place on her, if Doe's mother was ever late picking Doe up from school, and for Doe's personal phone number. Colaciello asked about any boyfriends and if Doe had ever had sex. When Doe

answered that she had never had sex, Colaciello stated that he was happy.

27.    During one of these private Resource periods, Colaciello put his hand inside Doe's shirt and massaged her back and neck for a few minutes.

28.    One day in early May of 2018 during an "A-schedule" day, on or about May 4, 2018, Doe stopped by Colaciello's class on her way to English for Resource period. Colaciello asked if Doe was working on a group project and Doe answered that she was working alone. Colaciello appeared in Doe's English class later and asked the substitute teacher to retrieve some papers from the printer downstairs. Colaciello locked the door after the substitute teacher left and had to unlock it a few minutes later when the substitute teacher knocked and asked for directions to the printers.

29.    Colaciello locked the door again when the substitute teacher left again and pulled Doe from her seat, held her in a headlock, and told her that he didn't want to a hear a word. He pushed her onto a classroom couch, sat on top of her, kissed her, and told her he loved her. ████████████ ████████████████████████████████████████████████████████████████████ ████████████████ He told her to be quiet and asked if she wanted to get him in trouble after everything he had done for her.

30.    Colaciello then released Doe and got some hand sanitizer. ██████████████████ ████████████

31.    Doe heard footsteps approaching the door and Colaciello unlocked the door to let the substitute back inside.  The substitute teacher informed Colaciello she couldn't find the printed papers and he replied "I can't talk right now." He threw a pillow to Doe and left.

32.    Doe covered her face with the pillow. The substitute teacher asked her if she was ok, but Doe only answered that she was having a "long day."

33.    Doe began avoiding Colaciello and asked her friends to accompany her around school.

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

One day in mid-May 2018, however, another one of Doe's teachers informed Doe that Doe had a math project due that afternoon and that Doe would need to go to Colaciello's classroom during Resource period. Doe asked her friend – "Sally" - to accompany her, but Sally was unable to do so.

34.     Doe went to Colaciello's math classroom and a sat at a desk far away from Colaciello. After about ten minutes of working on her project, Doe watched Colaciello stand up, lock the door, and cover the door window with black laminate. He then yanked away Doe's chair causing her to fall and hit her head on the hard floor. Doe began to cry but Colaciello told her not to play games and pinned her down. ████████████████████████████████████████████████████

████████████████████████████████████████████████████

35.     Doe cried from the pain. Colaciello informed her that she did not need to go to the nurse and that Doe should remain smart, nice, and quiet.

36.     Doe felt pain for the remainder of the day. When she went to math class later that afternoon, Colaciello pulled Doe's arm and whispered in her ear "don't limp" and "I love you, baby." He gave Doe some coloring paper while the other students took a quiz and gave her an A+ even though she did not complete any portion of the quiz. In the following days, Colaciello secretly gave Doe candy and mini eclairs in math class.

37.     During an "A" schedule day in the later half of May, on or about May 22, 2018, Colaciello asked Doe to remain after class for five minutes so he could talk to her. After class ended, Doe and her friend "Mary" stayed behind. Mary asked Doe if she was coming but Colaciello told Mary firmly that she could "go now, bye!"

38.     After Mary left, Colaciello locked the door and covered the door's window with black laminate again. He pushed Doe onto her back and sat on her. ████████████████████████████

████████████████████████████████ He gave her two pills and instructed her to put them in the

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

back of her mouth until it dissolved. Doe began to feel numb after taking the pill.

39.   ████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

40.   ████████████████████████████████████████████████

███████████████████████████████

41.     Afterwards, Colaciello informed Doe that if he found out she told anyone, she'd "be done." He made a slashing gesture at his throat.

42.     Doe's mother, who had been waiting for her outside, asked why she was so late and about the strange scent on Doe. Doe only said that she was finishing some work. Later that afternoon, Doe experienced a burning pain when she went to the bathroom and ████████████████████████

████████████████████████████████████████

43.     That evening, Doe performed at a music recital and her mother and sister noticed Doe limping. They asked her about it and Doe told them that her shoes hurt her feet.

44.     After the attack, Doe insisted on staying with a friend at all times during school. She frequently looked behind her to make sure she was not followed. She ignored Colaciello when he smiled at her and gave her large quantities of candy. She avoided him and ignored all his instructions. Colaciello became unpleasant again. One day in late May 2018, Colaciello kneed Doe in the buttocks when she bent down to pick up a pencil which left a bruise. Another time he scratched Doe's arm with the spiral from a notebook.

## POST-ASSAULT INVESTIGATION AND ADMINISTRATIVE ACTIONS

45.     Doe's mother, A.A., became increasingly concerned at Doe's out of character behavior. Doe would often cry at school and at home. She became angry quickly and easily. Each time A.A.

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

pressed Doe for an explanation, however, Doe would state that she was just stressed with tests and projects.

46.     Eventually, Doe told her mother that Colaciello had kneed her in the buttocks and scratched her with the spiral notebook. A.A. promptly emailed Principal Beichler about the incident and after following up several times, A.A. was able to get a meeting with the assistant principal, Dr. Tara Woolever ("Woolever"). Woolever assured A.A. that the school would have the nurse examine Jane Doe's bruise and scratch and handle the matter and that a police report was unnecessary.

47.     When the nurse did not meet with Jane Doe, A.A. became more concerned and called CPS herself. She then learned that CPS had not accepted reports from the school officials. A.A. initiated her own report and requested Trailside provide her copies of the reports made to CPS. Trailside officials refuse to provide the copies.

48.     A.A. kept Jane Doe home from school and insisted the school remove Colaciello. The school pressed A.A. to allow Doe to come back to school with an escort, but finally placed Colaciello on administrative leave when A.A. refused.

49.     On June 7, 2018, school officials pulled Doe out of class to meet with CPS social worker Sarah Gabrielson ("Gabrielson") and Detective David Orr ("Detective Orr"). Neither Gabrielson nor Detective Orr identified themselves to Doe before questioning her about her behavior in school and whether she had any issues with the school or its staff. When Doe asked who they were, they simply stated they were CPS officials and Doe only told them about Colaciello kneeing her in the buttock, scratching her with the spiral binder and rubbing himself against her in the corner.

50.     Doe's mother was not informed about the interview until afterwards.

51.     A.A. informed Detective Orr that this first interview was inadequate as Doe was clearly uncomfortable and would not share all relevant facts under those circumstances. Additionally, Jane

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

Doe had continued to share additional information with her mother regarding the assaults as she became more confident she would be protected.

52. Detective Orr scheduled a second interview at the Child Advocacy Center on June 18, 2018. Doe was taken to a room and informed that everything would be recorded and all tapes would be sent to the sheriff's office and the mental health department. Doe met with just Gabrielson while Detective Orr watched behind a two-way mirror. Doe informed Gabrielson about the rape and Colaciello's throat slashing gesture. She drew a picture of the rape because she could not describe it verbally.

53. A few days later, Detective Orr agreed to have Jane Doe to submit to a medical examination by the Forensic Assessment and Consultation Team at Fairfax County Hospital. A.A. attended the exam with Doe. After A.A. left the room, the nurse secretly informed Doe that █████

████████████████████████████████████

54. In a phone discussion on July 12, 2018, Detective Orr informed A.A. that Colaciello "doesn't like girls", thereby excluding him as a potential attacker. He also stated that he interviewed a substitute teacher who worked on May 3, 2018, a "B" day. A.A. asked Orr to allow Jane Doe to verify the substitute interviewed was the same one who witnessed events surrounding her assault. A.A. also explained that the attack involving the substitute occurred on an "A" day so this could not have been the same substitute teacher.

55. Detective Orr concluded no charges would be brought against Colaciello because there were no cameras inside the classroom or witnesses to corroborate Jane Doe's narrative. A.A. asked for a copy of the report, but Detective Orr and the Loudoun County Sheriff's Department refused to provide it.

56. During this time A.A. found a mental health professional at Loudoun Psychological

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

Services to meet with Jane Doe and help her through the trauma. On October 3, 2018, Doe's therapist independently contacted child protective services with detailed information about the sexual assaults including Doe's description of Colaciello's genitalia.

57. On October 12, 2018, A.A. contacted the Loudoun County Sheriff, Mike Chapman, and asked he reopen to investigation based on the disclosure of new incriminating information. A.A. met with personnel from the sheriff's department on October 15, 2018 and learned a few weeks later that that the department declined to reopen.

58. A.A. spoke to her school board representative from Ashburn, Eric Hornberger, at length about the incident in the summer of 2018 and how to obtain justice for her daughter. Hornberger informed A.A. that he was told Doe might have mistaken the teacher for someone else but took no further action.

59. On November 13, 2018, A.A. emailed Hornberger. He responded by email that he would look into the matter but provided no further response.

60. A.A. again spoke to Hornberger later in December 2018 after Doe was sentenced to in-school restriction (ISR). Hornberger suggested the school reach out to Dr. Walker of LCPS Support Services to assist Doe. No such referral was ever made and Hornberger did not reply to any of multiple other requests from A.A..

61. Loudoun County Public School ("LCPS") reinstated Colaciello in the summer of 2018 after the sheriff's investigation determined that there was insufficient evidence to bring a criminal case to Colaciello. It appeared no further action would be undertaken to determine if Colaciello acted appropriately.

62. A.A. reached out to LCPS officials, elected state government officials, and the Loudoun County School Board. Specifically, she emailed Superintendent Williams several times to inform him

13

about Colaciello and that Colaciello was set to chaperon a youth trip to Europe. Superintendent Williams' only response was to thank her for the notice and informed her that he referred the matter to LCPS administrators.

63.     Jane Doe slowly began sharing more with her mother and eventually told her mother about the marks on Colaciello's body.

64.     On December 3, 2018, A.A. met with the Loudoun County Department of Family Services to speak with the CPS supervisor and the assistant director, Susan MacPherson. She expressed frustration with how the investigation had been conducted and relayed the information ███████

███████████████████████████████ CPS decided to assign a new case officer, Linda Bell, and re-opened the investigation.

65.     On information and belief, Linda Bell contacted the sheriff's department and asked a deputy to attend the forensic interview of Doe scheduled on December 10, 2018 but the sheriff's department refused the request. After the forensic interview was completed, Bell sent a DVD to Sergeant Promisel of the forensic interview of Jane Doe and her description of Colaciello's genitals. Notwithstanding the CPS caseworker's assurances that Doe had provided specific, verifiable information that should be acted upon swiftly, the sheriff's department refused to reopen the case or to request a warrant to conduct a medical examination of Colaciello.

66.     Without assistance from the sheriff's department, CPS is unable to obtain additional evidence or proceed with the investigation.

**RETALIATION AGAINST A.A.**

67.     When it appeared the school would not terminate or transfer Colaciello, A.A. contacted the human resources office at the Loudoun County Public Schools on August 6, 2018 and spoke with Kristi Hurd ("Hurd"). Hurd indicated that the investigation was still open but confirmed no action was

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

currently being taken against Colaciello.

68.     A.A. expressed concern about Jane Doe attending classes at Trailside while Colaciello remained a teacher at the school and stated that she would be there on the first day of school to ensure her daughter's safety.  A.A. was also concerned about the broader matter of public concern, namely that other students would be in danger if Colaciello still had access to students alone in his classroom. On August 8, 2018, Hurd asked how A.A. would react if she found Colaciello at Trailside and A.A. responded that she would use every legal means available to bring Colaciello to justice.

69.     On August 14, 2018, Sergeant José Giron and Deputy Joseph Hacay of the Loudoun County Sheriff Department went to A.A.'s house. When she was not present, they spoke with A.A.'s brother and inquired whether A.A. was an American citizen. Giron later called A.A.'s ex-husband to inquire whether A.A. had any weapons in her home.

70.     Despite assurance that A.A. was not violent and did not have weapons, Trailside Middle School's resource officer served A.A. with a petition for a protective order on September 5, 2018, approximately two weeks into the school year. The petition was filed by Colaciello and sought to bar A.A. from coming within a certain distance of Colaciello, effectively barring her from Jane Doe's school.

71.     A Loudoun County court heard Colaciello's petition for a protective order on September 18, 2018. Principal Beichler, the eight-grade dean Denise Soukup, four Trailside teachers, Kriti Hurd, and Detective Orr testified on Colaciello's behalf.  Only Beichler and one teacher had received a summons.  The other witnesses, including the other teachers and Detective Orr, voluntarily testified against A.A.  It is not standard policy for LCPS or LCSO officials to testify about their official capacity interactions with a litigant during a a legal hearing absent a summons.  After hearing from all the witnesses, the court denied the request for a protective order as frivolous and dismissed the case with

prejudice.

72.      On December 8, 2018, Principal Beichler held a conference with of all of Jane Doe's teachers and all of the teachers of Jane Doe's sister. Principal Beichler informed the teachers that Beichler was investigating A.A..

73.      Beichler also informed the teachers she had banned A.A. from working as a substitute at Trailside in the future. At the time of her pronouncement, A.A. had communicated with numerous officials in Loudoun County about the danger posed by Colaciello and Beichler's refusal to remove his access to students.

74.      At her request, State Delegate John Bell sent a letter to Virginia Secretary of Education in Richmond on A.A.'s behalf and copied Superintendent Williams and the Loudoun County School Board. To date, no officials have responded to A.A. and Colaciello continues teaching with no disciplinary or precautionary actions taken.

## TRAILSIDE VIOLATES THE
## FEDERAL EDUCATIONAL RIGHTS & PRIVACY ACT (FERPA)

75.      On January 11, 2019, Jane Doe was very upset on returning home from school. A classmate informed Doe that Colaciello had called the classmate's mother complaining that students were calling Colaciello a pedophile. Colaciello had asked the classmate's mother about her opinion of him. Jane Doe complained to the school counselor, Mrs. Foster, who informed Doe she would relay this information to the administration.

76.      Providing personal information about a student to a party not authorized to receive that information, especially when it involves allegations of sexual assault, is a violation of the Federal Educational Rights and Privacy Act (FERPA).

## RETALIATION AGAINST JANE DOE

77.      At the beginning of the 2018-2019 school year, Jane Doe shared details about the sexual

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

assault with two trusted teachers. The teachers appeared supportive to Jane Doe. A.A. would later learn that the teachers had passed on Doe's allegations of assault to the Trailside administration.

78.     On September 24, 2018, Assistant Principal Patricia O'Connell and Dean Denise Soukup pulled Jane Doe from class and emphatically informed her that she was forbidden to discuss Colaciello's assault with any teachers as it made the teachers uncomfortable. Assistant Principal O'Connell also called Doe's mother and informed her that Doe was not to speak to any of the teachers regarding the assault.

79.     The events of September 24 unsettled Doe to the extent that she refused to attend school on September 25, 2018.

80.     On November 20, 2018, Doe emailed Colaciello from her school Chromebook. LCPS administrators intercepted the email and forwarded it to the Trailside counsellor. The counselor informed A.A. of the intercepted email.

81.     On or about December 4, 2018, Doe returned home from school crying because the school accused her of skipping school twice that day and had been given an in-school restriction ("ISR"). A.A. called the school but Dean Soukup hung up on A.A. after A.A. stated that she would hold LCPS responsible for the emotional trauma to Doe caused by the ISR.

82.     A.A. protested the ISR to the school administration and provided evidence that Doe had not missed class without teacher permission. Principle Beichler met with A.A. on December 6, rescinded the ISR, and promised it would not be in Doe's student record.

83.     On January 25, 2019, Jane Doe spoke to the school resource officer, Robert Thomasson, about the sexual assaults in the spring of 2018. Doe was concerned that other kids might be in danger and asked the officer to be especially vigilant in the Colaciello's hallway and after school to protect other girls around Colaciello.

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

84.     On February 8, 2019 Jane Doe sent an email to Colaciello challenging him to confront her before the school resource officer, counselors, and administrators. [Exhibit 1]

85.     On February 23, 2019, Doe texted Colaciello in an attempt to induce a confession. Colaciello did not respond.

86.     On March 12, 2019, Doe sent an email to Colaciello and copied the entire staff of Trailside Middle School wherein she discussed Colaciello's assault and concluded "for the sake of the students so no more girls become [your] victims." Doe sent this email after school hours, off-school grounds, and from her personal device. [Exhibit 2]

87.     Around 5 pm on the evening of March 12, the school resource officer and another Loudoun County deputy stopped by Doe's house to investigate Doe's earlier email. Neither officer had a warrant, but they asked to speak with Doe and to inspect her phone.

88.     The morning of March 13, 2019, Doe submitted a poster in civics class on the justice system. Her poster depicted a fictious trial of Colaciello for raping her.

89.     Principal Beichler summoned Doe to a meeting with the principal and assistant principal on March 13, 2019. Principal Beichler asked Doe if she sent the email and when Doe acknowledged that she did, Principal Beichler banged on the table and called Doe a liar for repeating her rape allegations.  Assistant Principal O'Connell accused Doe of changing her words many times. Principal Beichler and Assistant Principal O'Connell's belligerence was such that Doe became frightened and begged for the school resource officer.

90.     Principal Beichler summoned the school resource officer and informed Doe that she was suspended for ten (10) days for harassing Colaciello, disrupting campus, and violating the "acceptable use" policy.

91.     Doe's mother was called to Trailside where Principal Beichler presented her with a

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

suspension letter. This letter alleged Doe "falsely" claimed she had been raped, accused Doe of threatening Colaciello, and concluded that Doe had created a hostile work environment for Trailside staff. [Exhibit 3]

92.     The suspension letter did not provide alternative sources of education for Doe during the suspension, prevented Doe from using attending school events open to the public, prevented Doe for using outdoor school facilities when these facilities were open to the public, and from attending any open meetings occurring on Loudoun County Public School property, including school board meetings.  The letter required Doe's mother to meet with Trailside officials to discuss "improvements of [Doe's] behavior" before Doe would be allowed to return to school.

93.     Doe and A.A. had intended to use Trailside's outdoor facilities the following weekend but had to cancel their plans.

94.     A.A. immediately went to the central administration building and met with Virginia Patterson ("Patterson"), the superintendent's designee for student appeals, and Neil Slevin ("Slevin"). Patterson refused to rescind the suspension but informed A.A. she would review the matter to see if she could reduce the duration.

95.     On March 14, 2019, A.A. emailed Superintendent Williams, Michael Richards, Patterson, Slevin, Beichler, O'Connell, Woolever, and the Trailside counseling protesting the retaliation against Jane Doe. She requested a copy of Doe's educational record surrounding the May 2018 assault and the suspension.

96.     On May 18, 2019, A.A. went to the central administration building again to obtain the requested records but the LCPS personnel refused to meet with her. Shortly after leaving the building, A.A. received an email from Patterson reducing Doe's suspension to three days and allowing Doe to return to school on May 19, 2019. When A.A. asked for the matter to be removed from Doe's record,

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

Patterson informed A.A. that the suspension was final and was not appealable to the school board. [Exhibit 4]

97.     On the morning of March 19, 2019, A.A. and Doe met with Principal Beichler, Assistant Principal Woolever, and Counselor Slowey-Brown. Principal Beichler informed Doe she was forbidden from discussing the incidents involving Colaciello with Trailside staff inside or outside of school. Failure to comply would result in further suspension or involuntary transfer to another school.

98.     After Doe returned to class, A.A. again requested all educational records related to the May 2018 assault and the suspension. Principal Beichler informed A.A. that Doe's suspension had already been upheld and that she did not need to answer any more of A.A.'s questions.

99.     As of the date of this filing, the only documents provided responsive to A.A.'s request have been copies of documents related to the suspension created in February or March 2019. No documents related to the original assault complaints or the resulting LCPS investigation have been provided.

100.    After Doe's return to school, she approached her civics teacher and requested her poster. Later that day, Principal Beichler and Dean Mitchell pulled Doe out of French class, scolded her for requesting the poster, and informed her she would "never get it back."

101.    On March 27, 2019, A.A. emailed the entire Loudoun County School Board discussing Colaciello's assault of Jane Doe, the school's botched handling and investigation of the matter, the retaliatory measures employed to cover-up the mistakes, and requested the school expunge the retaliatory suspension. She copied Superintendent Williams, Chief of Staff Richards, and Principal Beichler in the email but none of the school board members or LCPS personnel have responded.

102.    Colaciello was offered a chance to take a polygraph and undergo a medical examination to demonstrate he was not Jane Doe's assailant on March 29, 2019. Colaciello declined. In April 2019,

Colaciello was again offered the chance to take a medical exam and again refused.

## INJURIES SUFFERED BY JANE DOE

103.    Prior to the events described herein, Jane Doe was a happy, health, and successful 12-year-old student. She maintained good grades, had healthy friendships, and rarely missed school.

104.    Beginning in the summer of 2018, Jane Doe has been in counseling on a weekly basis. Her counsellor diagnosed Doe with post-traumatic stress disorder ("PTSD") and states it will be several years before Doe can return to any semblance of a secure and confident persona.  The rape and resulting retaliation will continue to affect Jane Doe's mental health throughout her life.

105.    Doe not only fears for her safety but also the ridicule, disparagement, and retaliatory measures of the Defendants and others charged with her safety. The stress arising from this fear has caused Doe to pull out her hair uncontrollably and prevents her from sleep to the point her pediatrician prescribed melatonin.

106.    She has lost ten (10) pounds and has bouts of uncontrolled urination.

107.    Doe constantly fears for her own safety in school and for the safety of her fellow students but equally fears speaking to any adult as she has no faith in her own self-worth or credibility to adults.

## COUNT I
## VIOLATION  OF BODILY INTEGRITY GUARANTEED BY THE FOURTH AND FOURTEENTH AMENDMENTS
## PLAINTIFF JANE DOE AGAINST DEFENDANT FELIX COLACIELLO IN HIS INDIVIDUAL CAPACITY

108.    The allegations contained in paragraphs 1-107 are incorporated herein.

109.    Defendant Colaciello repeatedly victimized Jane Doe by sexually assaulting her on numerous occasions resulting in Colaciello's forcible rape of Doe on or about May 22, 2018.  ¶27-41.

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

110.    On other occasions, Colaciello assaulted Doe on her buttocks and/or her arm and, on one occasion, struck Doe with a belt.  ¶44.

111.    Each of these incidents occurred while Colaciello was serving as Doe's duly assigned Loudoun County Public Schools teacher.  As such, he was acting under the color of state law when the assaults occurred.

112.    Such assaults are a violation of Doe's substantive due process rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

113.    For Count I, Doe seeks compensatory and punitive damages in the amount of $5,000,000 against Felix Colaciello in his individual capacity.

## COUNT II
## COMMON LAW INTENTIONAL TORT FOR SEXUAL BATTERY
## PLAINTIFF JANE DOE AGAINST DEFENDANT FELIX COLACIELLO IN
## HIS INDIVIDUAL CAPACITY

114.    The allegations contained in paragraphs 1-107 are incorporated herein.

115.    Defendant Colaciello repeatedly victimized Jane Doe by sexually assaulting on numerous occasions resulting in Colaciello's forcible rape of Doe on or about May 22, 2018.  ¶27-41.

116.    On other occasions, Colaciello assaulted Doe on her buttocks and/or her arm.  ¶44.

117.    Such assaults constitute a common law intentional tort for sexual battery (forcible rape) against Felix Colaciello.

118.    For Count II, Doe seeks compensatory and punitive damages in the amount of $5,000,000 against Felix Colaciello in his individual capacity.

## COUNT III
## VIOLATION  OF FREE SPEECH RIGHTS  GUARANTEED BY THE FIRST
## AND FOURTEENTH AMENDMENTS VIA RETALIATION

**PLAINTIFF JANE DOE AGAINST DEFENDANT LCSB IN ITS OFFICIAL CAPACITY AND DEFENDANTS BEICHLER, O'CONNELL AND PATTERSON IN THEIR INDIVIDUAL CAPACITIES**

119.     The allegations contained in paragraphs 1-107 are incorporated herein.

120.     On September 24, 2018, Assistant Principal O'Connell pulled Jane Doe out of class to berate her for confiding in Trailside teachers about Colaciello's sexual assaults. ¶78-79.

121.     On or about December 4, 2018, the Trailside eighth-grade dean sentenced Jane Doe to in-school restriction (ISR) allegedly for skipping class.  Per LCPS policy, the student is "isolated from normal school activities and will be denied school privileges" during ISR.  Two days later, Principal Beichler was forced to rescind the suspension when a Trailside teacher refuted the alleged evidence collected by the eighth-grade dean.  ¶81-82.  The ISR punishment occurred approximately ten (10) days after Jane Doe emailed Colaciello confronting him about the assault and after a series of admonishments by Trailside officials restricting Jane Doe's right to speak out about her assault.

122.     On March 12, 2019, Jane Doe sent an email using private property while off school grounds and after hours informing Trailside staff about the dangers of having Colaciello present among teenage students following his rape of Doe in May 2018.  ¶86-97.  Such an email represents protected speech under the First and Fourteenth Amendments to the United States Constitution.

123.     Principal Beichler held a meeting with Trailside staff that afternoon informing them that Doe's email contained false allegations detailing Colaciello's rape of Jane Doe.

124.     The following day and directly as a result of Doe's email, Principal Beichler suspended Doe for ten days for allegedly "harassing" Colaciello and "disrupting" staff.  ¶89-90.

125.     The suspension was upheld by the LCPS designee for student suspensions, Patterson, as the final decision-making authority for LCPS.  Patterson also refused to expunge the upheld

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

suspension from Doe's student record. ¶94-96.

126. The ISR restriction placed upon Jane Doe and the suspension of Jane Doe by Beichler constitute retaliation for protected speech by Jane Doe.

127. It is settled law that such retaliation, even when the actions taken by an official may be within their normal authority, is unconstitutional and a violation of Doe's protected rights under the First and Fourteenth Amendments of the Unites States Constitution.

128. On September 24, 2018, Assistant Principal O'Connell ordered Doe to cease all communication with Trailside teachers regarding Doe's rape at the hands of Colaciello. On March 19, 2019, upon Jane Doe's return to Trailside following her shortened suspension, Principal Beichler threatened to further suspend Jane Doe if she exercised her right to speak to Trailside teachers about the sexual assaults by Colaciello either on school grounds or off.

129. The restrictions placed upon Jane Doe by Principal Beichler and Assistant Principal O'Connell precluding Doe from engaging in protected speech, including raising awareness about matters of public concern, are unconstitutional limitations on Jane Doe's free speech rights.

130. Jane Doe has been subjected to emotional distress and psychological injuries as a result of the retaliation described herein requiring long term therapy and implicating her life and future livelihood.

131. For Count III, Doe seeks compensatory and punitive damages in the amount of $2,000,000 against LCSB in an official capacity (compensatory only) as well as Patterson, Beichler, and O'Connell in their individual capacities. Doe also seeks equitable relief in the form of an expungement of the suspension from Jane Doe's educational record.

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

## COUNT IV
## VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972
## VIA SEXUAL DISCRIMINATION
## PLAINTIFFS JANE DOE AGAINST DEFENDANT LCSB IN ITS OFFICIAL
## CAPACITY

132. The allegations contained in paragraphs 1-107 and 120-130 are incorporated herein.

133. Speaking out to school officials, county officials and the public at large regarding a sexual assault by a government teacher is a protected action under Title IX.

134. Retaliation for such speech constitutes discrimination based on sex under Title IX.

135. Such discrimination is a violation of Title IX of the Education Amendments of 1972.

136. For Count V, Jane Doe seeks compensatory damages in the amount of $2,000,000 against LCSB in an official capacity. Doe also seeks equitable relief in the form of an expungement of the suspension from Jane Doe's educational record.

## COUNT V
## VIOLATION OF FIRST AND FOURTEENTH AMENDMENTS' SPEECH
## AND ASSEMBLY RIGHTS
## PLAINTIFF JANE DOE AGAINST DEFENDANT LCSB IN ITS OFFICIAL
## CAPACITY AND DEFENDANTS BEICHLER AND PATTERSON IN THEIR
## INDIVIDUAL CAPACITIES

137. The allegations contained in paragraphs 1-107 and 120-130 are incorporated herein.

138. Defendants Beichler and Patterson ordered Jane Doe to cease speaking out about her sexual assault at the hands of Trailside teacher Felix Colaciello else Doe would be subjected to suspension from LCPS or involuntary transfer to an alternative program or another middle school. ¶78-79, 89-97.

139. To this day, Jane Doe faces a suspension from LCPS schools if she speaks out about the

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

safety threat posed by Colaciello or the events surrounding Colaciello's rape of Doe.

140.    The ten-day suspension of Jane Doe in March 2019, subsequently shortened to three days, restricted Doe from setting foot on Trailside Middle School grounds after school hours when members of the public were granted full access to use its outdoor facilities.  Further, the suspension restricted Doe from attending student events during school hours that were open to the general public.

141.    Such restrictions are unconstitutional within limited and designated public forums represented by Trailside Middle School grounds after school hours and during student events occurring within school hours.  ¶92-93.

142.    Given the suspension policy upheld by Patterson, Doe is chilled from speaking out on the safety posed by Colaciello at LCPS schools and about the events related to her sexual assault.  She is chilled both while on school grounds and off school grounds and with respect to the audience of her speech.

143.    It is settled law that school grounds after school hours qualify at least as limited public forums.

144.    Such suspensions and orders to refrain from protected speech are an infringement upon Jane Doe's rights guaranteed by the First and Fourteenth Amendments to the United States Constitution.

145.    For Count VI, Doe seeks compensatory damages in the amount of $50,000 against LCSB in an official capacity and against Beichler and Patterson in their individual capacities.

146.    For Count VI, Doe seeks equitable relief requiring LCPS to rescind and purge the ten-day suspension from Doe's student record and to enjoin LCPS from suspending Doe for speaking out to other teachers about incidents of assault by an LCPS employee.

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

**COUNT VI**

**VIOLATION  OF VIRGINIA FREEDOM OF INFORMATION ACT AND DATA COLLECTION AND DISSEMINATION PRACTICES ACT UNDER SUPPLEMENTAL JURISDICTION**
**PLAINTIFF A.A. AGAINST DEFENDANTS BEICHLER, PATTERSON AND LINDA BELL IN THEIR OFFICIAL CAPACITIES**

147.    The allegations contained in paragraphs 1-107 and 120-130 are incorporated herein.

148.    On multiple occasions, A.A. requested copies of Jane Doe's educational record related to her suspensions and related to both the assault and investigation of Colaciello in the spring and summer of 2018.  ¶95-99.

149.    LCPS officials only provided A.A. with 41 pages from February and March of 2019. No information related to the investigation of Colaciello were provided to date.

150.    Virginia's Freedom of Information Act (FOIA), § 2.2-3700, requires government bodies to respond within five (5) business days to any request for public records for which the body serves as custodian.  If the government body withholds a record based on a valid exemption, the body must cite the nature of the records and the basis for the exemption.  No such exemptions were cited as the basis for LCPS withholding any records.

151.    Virginia's Data Collection and Dissemination Practices Act (DCDPA), § 2.2-3800, requires government bodies to respond within five (5) business days to any request for records pertaining to a specific individual for which the body serves as custodian similar to Virginia's FOIA statute.  If the government body withholds a record based on a valid exemption, the body must cite the nature of the records and the basis for the exemption.  No such exemptions were cited as the basis for LCPS withholding any records under DCDPA.

152.    Neither Virginia's FOIA nor DCDPA require the requester to invoke the act when

27

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

requesting records.

153. On April 18, 2019, A.A. requested via her counsel the investigative records of Loudoun Child Protective Services concerning Jane Doe from Linda Bell. No records related to that request have been provided to date nor have any exemptions under FOIA or DCDPA been provided.

154. Failure to provide records or exemptions in response to a valid FOIA or DCDPA request within the allowed time period constitutes a violation of the Virginia statutes.

155. For Count VI, A.A. seeks a writ of mandamus requiring LCPS to provide the full educational record of Jane Doe related to her suspension in March 2019 as well as the sexual assault by and investigation of Colaciello in the spring and summer of 2018. A.A also seeks a writ of mandamus requiring Loudoun CPS to provide the full investigative record of Jane Doe related to her complaints in May and June of 2018 as well as any follow-on investigations initiated between December 2018 and March 2019.

### RELIEF

WHEREFORE, the Plaintiffs respectfully requests the Court grant the following:

A. Award Plaintiff $10,000,000 in compensatory and punitive damages against Defendant Colaciello on Counts I-II;

B. Award Plaintiff $4,000,000 in compensatory and punitive damages against Defendants LCSB (compensatory damages only), Beichler, Patterson, and O'Connell on Counts III-IV;

C. Award Plaintiff $50,000 in compensatory and punitive damages against Defendants LCSB (compensatory damages in an official capacity only), Beichler, and Patterson on Count V;

D. Award equitable relief in the form of an expungement of the suspension from Jane Doe's educational record;

E. Award declaratory and injunctive relief to Doe enjoining Defendants from suspending Doe for speaking out on matters of safety or public concern to LCPS employees when there is no safety threat to the school or its staff as a violation of Doe's First and Fourteenth Amendment rights;

F. Award declaratory and injunctive relief to Doe enjoining Defendants from barring Doe from school events open to the general public and from school facilities after school hours as a violation of their First and Fourteenth Amendment rights;

G. Award Plaintiff a writ of mandamus requiring Defendants to provide Doe with a full copy of the record surrounding the assault complaint, the resulting investigations and the student suspension in Count VI;

H. Award Plaintiff her costs, including any reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988.

I. Grant any further relief as shall be appropriate

Respectfully Submitted,

A.A. and Jane Doe
By Counsel

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 203 | Herndon, Virginia 20170 - 4469
Telephone: (703) 437-7305 | Facsimile: (703) 592-6316

Moreton & Edrington, P.L.C.
297 Herndon Parkway, Suite 302
Herndon, Virginia 20170
Phone: (703) 437-7305
Fax: (703) 592-6316


/s/ Fenlene H. Edrington
Fenlene H. Edrington, VSB #82067
Email: fhe@melawva.com
*Counsel for the Plaintiffs*